1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11
12
13
14
15
16

| | |
|---|---|
| JOHN GORDON, ) | Case No. CV 06-230 JC |
|        Plaintiff, ) | |
| ) | |
|        v. ) | MEMORANDUM OPINION AND |
| ) | ORDER OF REMAND |
| MICHAEL J. ASTRUE,[1] ) | |
| Commissioner of Social ) | |
| Security, ) | |
|        Defendant. ) | |

17  **I.    SUMMARY**

18         On January 12, 2006, plaintiff John Gordon ("plaintiff") filed a Complaint

19  seeking review of the Commissioner of Social Security's denial of plaintiff's

20  application for benefits.  The parties have filed a consent to proceed before a

21  United States Magistrate Judge.

22         This matter is before the Court on the parties' cross motions for summary

23  judgment and remand, respectively ("Plaintiff's Motion") and ("Defendant's

24  Motion").  The Court has taken both motions under submission without oral

25
26
27
28

        [1]Michael J. Astrue is substituted as Commissioner of Social Security pursuant to Fed. R.
Civ. P. 25(d)(1).

1

1  argument.  See Fed. R. Civ. P. 78; L.R. 7-15; August 27, 2007 Case Management

2  Order, ¶ 5.

3       Based on the record as a whole and the applicable law, the decision of the

4  Commissioner is REVERSED AND REMANDED for further proceedings

5  consistent with this Memorandum and Opinion and Order of Remand**.**

6  **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

7  **DECISION**

8       On October 10, 2002, plaintiff filed an application for disability insurance

9  benefits.  (Administrative Record ("AR") 83-85).  Plaintiff asserted that he became

10 disabled on November 26, 2000, due to a broad-based paracentral left-sided focal

11 disk extrusion at L4-L5, which caused plaintiff to experience consistent sharp back

12 pain and numbness in his legs, which in turn rendered plaintiff unable to walk.

13 (AR 83, 95).  An Administrative Law Judge (the "ALJ") examined the medical

14 record and heard testimony from plaintiff (who was represented by counsel), a

15 medical expert, and a vocational expert on July 14, 2004.  (AR 514-67).

16      On February 11, 2005, the ALJ determined that plaintiff was not disabled

17 through the date of the decision.  (AR 22).  Specifically, the ALJ found:

18 (1) plaintiff suffered from a moderate lumbar herniation at L4-5 and a mild disc

19 bulge at L5-S1[2] (AR 21); (2) plaintiff's impairments or combination of impairments

20 did not meet or medically equal one of the listed impairments (AR 21); (3) plaintiff

21 (a) could lift or carry up to ten pounds occasionally and less than ten pounds

22 frequently; (b) could stand or walk two hours in an eight-hour workday;

23 (c) could sit six hours in an eight-hour workday as long as he could stand and

24 stretch briefly each half hour; (c) could occasionally balance, bend, stoop, kneel,

25 crouch, crawl, climb stairs, and push or pull with the extremities; (d) could not

26 climb ropes, ladders, or scaffolding; and (e) could not work around heights or

27 hazards (AR 21); (4) plaintiff could not perform his past relevant work (AR 16,

28

[2]The ALJ found that plaintiff did not have a severe mental impairment.  (AR 20).

1   21); (5) there were significant number of jobs in the economy that plaintiff could
2   perform (AR 22); and (6) plaintiff's testimony was not credible to the extent he
3   alleged an inability perform any work.  (AR 21).

4        On November 25, 2005, the Appeals Council denied review, and the ALJ's
5   decision became the final decision of the Commissioner.  (AR 5-8).

6   **III.   APPLICABLE LEGAL STANDARDS**

7        **A.   Sequential Evaluation Process**

8        To qualify for disability benefits, a claimant must show that he is unable to
9   engage in any substantial gainful activity by reason of a medically determinable
10  physical or mental impairment which can be expected to result in death or which
11  has lasted or can be expected to last for a continuous period of at least twelve
12  months.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C.
13  § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing
14  the work he previously performed and incapable of performing any other
15  substantial gainful employment that exists in the national economy.  Tackett v.
16  Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

17       In assessing whether a claimant is disabled, an ALJ is to follow a five-step
18  sequential evaluation process:

19      (1)    Is the claimant presently engaged in substantial gainful activity?  If so,
20          the claimant is not disabled.  If not, proceed to step two.

21      (2)    Is the claimant's alleged impairment sufficiently severe to limit
22          his ability to work?  If not, the claimant is not disabled.  If so,
23          proceed to step three.

24      (3)    Does the claimant's impairment, or combination of
25          impairments, meet or equal an impairment listed in 20 C.F.R.
26          Part 404, Subpart P, Appendix 1 (the "Listings")?  If so, the
27          claimant is disabled.  If not, proceed to step four.

28  ///

(4)     Does the claimant possess the residual functional capacity to perform his past relevant work?[3]  If so, the claimant is not disabled.  If not, proceed to step five.

(5)     Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante, 262 F.3d at 953-54 (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

**B.     Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and

---

[3]Residual functional capacity is "what [one] can still do despite [ones] limitations" and represents an "assessment based upon all of the relevant evidence."  20 C.F.R. § 404.1545(a).

1 evidence that detracts from the [Commissioner's] conclusion.'" <u>Aukland v.</u>
2 <u>Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting <u>Penny v. Sullivan</u>, 2 F.3d
3 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming
4 or reversing the ALJ's conclusion, a court may not substitute its judgment for that
5 of the ALJ.  <u>Robbins</u>, 466 F.3d at 882 (citing <u>Flaten</u>, 44 F.3d at 1457).

6 **IV.   DISCUSSION**

7     Plaintiff contends:  (1) his medical condition satisfied the requirements of
8 Listing 1.04A; (2) the ALJ erred in rejecting the treating physician's opinion;
9 (3) the ALJ erred in assessing his subjective symptoms and credibility; and (4) the
10 ALJ erred in finding his mental impairment non-severe.  (Plaintiff's Motion at 2, 7,
11 8, 11).  Plaintiff requests that this Court reverse the ALJ's decision and award
12 benefits.  (Plaintiff's Motion at 17).  Defendant contends that the case should be
13 remanded for further proceedings.

14     For the reasons stated below, the decision of the Commissioner is reversed
15 and remanded for further proceedings consistent with this Memorandum and
16 Opinion and Order of Remand.

17     **A.   Listing 1.04A**

18     Plaintiff contends that the ALJ erroneously failed to consider medical expert
19 testimony that plaintiff met Listing 1.04A – disorders of the spine  – and that, as a
20 result, the ALJ erroneously failed to find that plaintiff did in fact meet such listing.
21 (Plaintiff's Motion at 2, 7).

22     **1.   Pertinent Law**

23     An impairment matches a listing if it meets all of the specified medical
24 criteria.  <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 (1990); <u>Tackett</u>, 180 F.3d at 1098.
25 An impairment that manifests only some of the criteria, no matter how severely,
26 does not qualify.  <u>Sullivan</u>, 493 U.S. at 530; <u>Tackett</u>, 180 F.3d at 1099.  An unlisted
27 impairment or combination of impairments is equivalent to a listed impairment if
28 ///

5

medical findings equal in severity to all of the criteria for the one most similar listed impairment are present. <u>Sullivan</u>, 493 U.S. at 531.

In assessing whether an impairment medically equals a listing, the ALJ is to consider all relevant evidence in the case record about the claimant's impairment and its effect on the claimant, as well as the opinion given by one or more medical or psychological consultants designated by the Commissioner. 20 C.F.R. § 404.1526(c). Although the ALJ must consider the opinion of such a consultant on the issue of whether a claimant's impairment meets or equals a listing, the final responsibility for deciding medical equivalence rests with the Administrative Law Judge. 20 C.F.R. §§ 404.1526(e), 404.1527(e)(2).

A claimant meets Listing 1.04A, for disorders of the spine, where there is:

Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04A.

**2.    Pertinent Facts**

At the hearing, Dr. Joseph Jensen, the medical expert, initially testified that "Listing of 1.04A [was] not met nor equaled . . . ." (AR 550). Thereafter, plaintiff's counsel ("Counsel") questioned Dr. Jensen as follows:

Counsel:    Doctor, you indicate your belief [that plaintiff] doesn't meet Listing 1.04A. Can you tell me what findings are missing?

Dr. Jensen:  There's a lack of dermatomal sensory distribution. There's a slight weakness, but not atrophy – or significant weakness I would say – in the left leg. [plaintiff] does have some restriction of back motion.

6

1   Counsel:      So what's missing then is the loss of sensation and a
2                 dermatomal distribution?

3   Dr. Jensen:   Yes.  To some degree, yes.

4   (AR 551-52).

5       Dr. Jensen's attention was then called to reports from Dr. Francis
6   D'Ambrosio dated February 25, 2002 and November 12, 2002, in which Dr.
7   D'Ambrosio observed "decreased sensation" along the S1 dermatome.  (AR 276,
8   359, 552, 554).  After further discussion of the other medical criteria for meeting
9   this Listing (i.e., positive straight leg raising and muscle weakness), the following
10  exchange between Counsel and Dr. Jensen took place:

11  Counsel:      I don't want to be argumentative, Doctor.  I certainly
12                don't want to be that.  But it seems to me that every
13                aspect of Listing 1.04A is documented in this medical
14                record.

15  Dr. Jensen:   Yes, it does, [Counsel].  I guess it does on my further
16                review . . . .

17  (AR 555).

18      Thereafter, the ALJ inquired of Dr. Jensen's revised opinion as follows:

19  ALJ:          Okay.  Are you changing your testimony that this now
20                meets the Listing 1.04A?

21  Dr. Jensen:   Yeah.  It would appear to meet the Listing then.

22  ALJ:          Okay.  For the entire period of time or for a portion of
23                this period of time?

24  Dr. Jensen:   It would be during that period of time.  There's a lack in
25                some of the more recent observations –

26                . . . .

27  Dr. Jensen:   – Dr. [Scott] Goldman, who has been seeing [plaintiff]
28                for the last three years, didn't document all of that.  I –

7

1    and generally, even though there is a documented
2    presence of a herniated disc by MRI imaging, sometimes
3    that persists and is not significant in the way of
4    producing pain.  But I think I would have to say then in
5    this case maybe through the entire period he met the
6    Listing.
7    ALJ:        Is there motor loss, atrophy with –
8    Dr. Jensen:  Not motor loss, but some weakness was demonstrated.
9                . . . .
10   ALJ:        Okay.  Was there muscle weakness and sensory loss back
11               to November of 2000?  Because I'm just seeing it – I
12               didn't see it the entire period of time, Doctor.  That's
13               why I'm asking you.
14   Dr. Jensen:  Oh.
15   ALJ:        And on my review of the records, I couldn't find it for 12
16               continuous months.
17   Dr. Jensen:  You know, I'd have to spend I think more time to really
18               review that.  During the period of time that – it was – Dr.
19               [D']Ambrosio was seeing him – I guess there was that
20               dermatomal sensory loss –
21               . . . .
22   Dr. Jensen:  – and some weakness . . . .
23   ALJ:        And Dr. D[']Ambrosio didn't see him the entire period
24               of time.  Is that correct?
25   Dr. Jensen:  Yes.
26   ALJ:  Okay.  And it wasn't documented by the other doctors?
27   Dr. Jensen:  Not that I see.
28   (AR 555-57).

8

1    In her decision, the ALJ noted that Dr. Jensen found "no significant

2   evidence of impaired motor function, muscle atrophy, weakness[,] or sensory

3   impairment" and that "[t]here was no evidence [plaintiff] required a lumbar fusion

4   or other surgery." (AR 20). The ALJ then commented that Dr. Jensen "reviewed

5   all of the medical records and concluded [plaintiff] was capable of performing

6   sedentary to light work." (AR 20). Thereafter, the ALJ determined that plaintiff

7   did not meet or equal the Listing. (AR 21).

8                    **3.    Analysis**

9    Plaintiff contends that the ALJ failed to consider Dr. Jensen's testimony that

10   plaintiff's physical impairments met Listing 1.04A. (Plaintiff's Motion at 7). In

11   other words, plaintiff argues that the ALJ failed to recognize Dr. Jensen's

12   testimony as an opinion that plaintiff met Listing 1.04A.

13    First, the Court finds that the basis for plaintiff's argument is faulty because

14   his characterization of Dr. Jensen's opinion is not supported by the record. Here,

15   Dr. Jensen made several equivocal statements concerning plaintiff's medical

16   condition. Dr. Jensen initially testified that "Listing of 1.04A [was] not met or

17   equaled . . . ." (AR 550). However, after questioning from Counsel, Dr. Jensen

18   retracted his opinion, stating that he "guess[ed]" Listing 1.04A was met upon

19   "further review." (AR 555). Then, in response to the ALJ's questions, Dr. Jensen

20   suggested that plaintiff may not have met the Listing. (AR 556). Specifically, Dr.

21   Jensen stated that he needed to "spend . . . more time to really review" the record

22   in order to determine whether the symptoms at issue (i.e., muscle weakness and

23   sensory loss) were continuous for the minimum required time period of 12 months.

24   (AR556).

25    In addition, Dr. Jensen agreed with the ALJ's assertion that Dr.

26   D'Ambrosio, the physician who recorded these symptoms, "did [not] see

27   [plaintiff] the entire period of time" and the symptoms were not "documented by

28   the other doctors." (AR 557). Although the record shows that Dr. D'Ambrosio

consistently observed decreased sensation along the S1 dermatome, his course of treatment, from February 25, 2002 through February 18, 2003, falls slightly short of 12 months.  (AR 266, 269, 272, 276, 281, 285, 288, 291, 294, 297, 359).  Thus, Dr. Jensen's testimony could reasonably have been interpreted as an opinion that the symptoms were not observed for at least 12 continuous months.

Contrary to plaintiff's assertion, Dr. Jensen did not definitively state that plaintiff met Listing 1.04A.  Plaintiff fails to consider Dr. Jensen's responses to the ALJ's questions concerning the duration of the symptoms at issue.  At best, Dr. Jensen testified that he was unsure of whether plaintiff met Listing 1.04A.  This fails to constitute an opinion that plaintiff had satisfied his burden to demonstrate that he met or equaled a Listing.  Cf. Holohan v. Massanari, 246 F.3d 1195, 1206 n.8 (9th Cir. 2001) (criticizing ALJ for mischaracterizing examining physician's opinion that claimant "may" be able to perform simple tasks as opinion that claimant "could" perform simple tasks).

Second, the Court has itself reviewed the record and notes that the symptoms at issue – i.e., muscle weakness accompanied by sensory loss – were reported by physicians only three times – on August 6, 2001, June 25, 2003 and October 7, 2004.[4]  (AR 147, 336-37, 499).[5]  Conversely, normal motor strength was reported on at least six different occasions, from March 21, 2001 through November 9, 2004.  (Plaintiff's Motion at 25; AR 138, 153, 178, 199, 360).

///

---

[4]Muscle weakness was reportedly observed on one other occasion on November 5, 2001. (AR 142).  However, in that examination, muscle weakness was not reportedly accompanied by sensory loss.  (AR 142).  A loss of sensation was reportedly observed on multiple occasions, but without reference to accompanying muscle weakness.  (AR 138, 142, 178, 199, 266, 269, 274, 276, 281, 285, 288, 291, 294, 297).

[5]Contrary to Dr. Jensen's suggestion, Dr. D'Ambrosio never reported muscle weakness. (AR 264-98, 355-62).  In fact, in his initial orthopedic evaluation on February 25, 2002, Dr. D'Ambrosio reported that plaintiff had normal motor strength in his lower extremities.  (AR 360).

Despite the foregoing, the Court finds that this case should be remanded for reconsideration of whether plaintiff's impairments met or equaled the Listing.  As noted above, muscle weakness and accompanying sensory loss were reportedly observed three times over a more than 12-month period.[6]  The Court cannot discern whether the ALJ did not recognize this fact or whether she viewed such sporadic reports as insufficient to establish that plaintiff met the Listing for a continuous 12-month period.  Further, in determining that plaintiff did not meet or equal Listing 1.04A, the ALJ reasoned, in part, that "[t]here was no evidence [plaintiff] required a lumbar fusion or other surgery." (AR 20).  However, Dr. Goldman's treatment notes are replete with recommendations that plaintiff undergo back surgery.  (AR 411, 419, 422, 424, 427, 430, 433, 436, 439, 445, 448, 457, 473, 475, 477, 478, 480, 481).  Moreover, treatment notes submitted to the ALJ on December 17, 2004 (i.e., after the hearing but prior to the ALJ's decision) reflect that, on November 9, 2004, plaintiff did in fact undergo major back surgery consisting of L4-5 and L5-S1 discectomy, interbody fusion, and pedicle screw fixation.  (Plaintiff's Motion at 27).

Additionally, Dr. Jensen, who rendered an opinion upon which the ALJ apparently relied, did not have an opportunity to review evidence of the back surgery.[7]  Such evidence may have changed Dr. Jensen's opinion as he appears to have placed at least some weight on plaintiff's failure to receive a major surgical procedure in finding that Listing 1.04A was not met or equaled.[8]  (AR 549-50).

---

[6]Between June 25, 2003 and October 7, 2004, evidence of normal muscle strength was not reported.

[7]Although the ALJ did not expressly adopt Dr. Jensen's opinion, the ALJ's residual functional capacity assessment was indistinguishable from her summary of Dr. Jensen's assessment.  (AR 20, 21).

[8]Dr. Jensen asserted that the record did not evidence plaintiff's allegation that low back fusion was recommended.  (AR 549-50).  Dr. Jensen did note that, although Dr. Goldman had

(continued...)

1    Accordingly, a remand is appropriate so that the ALJ can consider

2    plaintiff's surgery and obtain a further consultative evaluation to assess whether

3    plaintiff's condition met or equaled a listing.

4    **B.    Treating Physician**

5         **1.    Applicable Law**

6    In Social Security cases, courts employ a hierarchy of deference to medical

7    opinions depending on the nature of the services provided.  Courts distinguish

8    among the opinions of three types of physicians:  those who treat the claimant

9    ("treating physicians") and two categories of "nontreating physicians," namely

10   those who examine but do not treat the claimant ("examining physicians") and

11   those who neither examine nor treat the claimant ("nonexamining physicians").

12   Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted).  A

13   treating physician's opinion is entitled to more weight than an examining

14   physician's opinion, and an examining physician's opinion is entitled to more

15   weight than a nonexamining physician's opinion.[9]  See id.  In general, the opinion

16   of a treating physician is entitled to greater weight than that of a non-treating

17   physician because the treating physician "is employed to cure and has a greater

18   opportunity to know and observe the patient as an individual."  Morgan v.

19   Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir.

20   1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

21   ///

---

[8](...continued)
referred plaintiff to a neurosurgeon, the referral was probably for a micro-discectomy, a less
invasive procedure than fusion.  (AR 550).  In addition, he commented that plaintiff was
recommended to undergo intradiscal electrothermal therapy, also a less invasive procedure.  (AR
550).

[9]Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to
draw bright line distinguishing treating physicians from non-treating physicians; relationship is
better viewed as series of points on a continuum reflecting the duration of the treatment
relationship and frequency and nature of the contact) (citation omitted).

The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)). Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal quotations omitted). The ALJ can reject the opinion of a treating physician in favor of a conflicting opinion of another examining physician if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. Id. (citation and internal quotations omitted); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to  reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion). "The ALJ must do more than offer his conclusions." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988). "He must set forth his own interpretations and explain why they, rather than the [physician's], are correct." Id. "Broad and vague" reasons for rejecting the treating physician's opinion do not suffice. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).

## 2.    Pertinent Facts

Dr. Goldman, an orthopedist, treated plaintiff from January 5, 2001 through July 4, 2004.  (AR 488, 495).  Throughout the course of treatment, Dr. Goldman recorded decreased range of motion in the lumbar spine; pain, spasm, and weakness in the lumbar spine; and positive straight leg raising tests on the left

///

///

1   side.[10]  (AR 410, 415, 418, 421, 426, 429, 432, 435, 438, 441, 444, 447, 450, 453,

2   456, 459, 462, 464, 467, 469, 471, 473, 475, 477, 478, 479, 480, 481, 482, 483,

3   484, 485, 486).  In his Residual Functional Capacity Questionnaire dated July 4,

4   2004, Dr. Goldman opined that plaintiff:  (1) could walk for about one city block

5   without rest; (2) could continuously sit or stand for about ten minutes at one time;

6   (3) could sit, stand, or walk for less than a total of two hours in an eight-hour

7   workday; (4) required shifting positions at will from sitting, standing, or walking;

8   (5) required ten-minute breaks for every ten minutes of work; could never lift or

9   carry any weight; and (6) could never bend or twist at the waist.  (AR 492-94).

10      This opinion contradicted the findings of Dr. Jensen, who opined that

11   plaintiff: (1) could lift and carry less than ten pounds frequently and up to a

12   maximum of ten pounds; (2) could stand or walk for a total of about two hours in

13   an eight-hour workday; (3) could sit for about six hours in an eight-hour workday

14   as long as he could stand and stretch for three to five minutes for every one-half

15   hour of work; (4) could occasionally perform pedal operations with the left lower

16   extremity, balance, bend, stoop, kneel, crouch, crawl, and climb stairs; (5) could

17   not climb ropes, ladders, or scaffolds; and (6) could not work in hazardous

18   heights.  (AR 550-51).

19      The ALJ implicitly adopted Dr. Jensen's assessment of plaintiff's residual

20   functional capacity.  (AR 20, 21).

21      **3.    Analysis**

22      Although the ALJ appears to have adopted Dr. Jensen's assessment, she

23   failed to provide <u>any</u> reason, let alone a "specific and legitimate" reason for

24   ///

25

26      [10]In his Residual Functional Capacity Questionnaire, Dr. Goldman noted that he had
   observed positive straight leg raising tests on both sides.  (AR 489).  However, in his treatment
27   records, Dr. Goldman reported positive straight leg raising tests on only the left side.  (AR 462,
   464, 486).
28

14

1   rejecting Dr. Goldman's opinion.[11]   Lester, 81 F.3d at 830; see also Reddick v.

2   Chater, 157 F.3d 715, 725 (9th Cir. 1998) (ALJ satisfies requirement of providing

3   "specific and legitimate" reasons by "setting out a detailed and thorough summary

4   of the facts and conflicting clinical evidence, stating his interpretation thereof, and

5   making findings") (citing Magallanes, 881 F.2d at 751).  Although the ALJ might

6   nonetheless have chosen to adopt Dr. Jensen's opinion over that of Dr. Goldman,

7   this Court cannot so conclude on this record.  On remand, the Administration

8   should (i) evaluate Dr. Goldman's opinion; (ii) explain the weight given to such

9   opinion, if any; and (iii) if such opinion is rejected, state the reason(s) therefor.

10      **C.   Plaintiff's Credibility**

11          **1.   Applicable Law**

12          An ALJ is not required to believe every allegation of disabling pain or other

13   non-exertional impairment.  Orn, 495 F.3d at 635 (citing Fair v. Bowen, 885 F.2d

14   597, 603 (9th Cir. 1989)).  If the record establishes the existence of a medically

15   determinable impairment that could reasonably give rise to symptoms assertedly

16   suffered by a claimant, an ALJ must make a finding as to the credibility of the

17   claimant's statements about the symptoms and their functional effect.  Robbins,

18   466 F.3d 880 at 883 (citations omitted); Moisa v. Barnhart, 367 F.3d 882, 885 (9th

19   Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see

20   also 20 C.F.R. § 404.1529(a) (explaining how pain and other symptoms are

21   evaluated).

22   ///

23

24          [11]The ALJ summarized Dr. Goldman's findings as follows:

25          In July 2004 Dr. Goldman completed a residual functional capacity assessment.
            He opined [plaintiff] was restricted to a limited range of sedentary work.  He
26          stated [plaintiff] could lift or carry less than 10 pounds and sit, stand or walk less
            than 2 hours in an 8-hour workday.  He would require frequent breaks throughout
27          the day to relieve back pain.

28

     (AR 18).

1  To reject a claimant's testimony regarding pain and other subjective

2  symptoms as not credible, an ALJ is minimally required to make "specific, cogent"

3  findings, supported in the record, to justify the ALJ's determination.  See Robbins,

4  466 F.3d at 883; Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006); Holohan,

5  246 F.3d at 1208 (the ALJ must "specifically identify the testimony [the ALJ]

6  finds not to be credible and must explain what evidence undermines the

7  testimony").  Unless an ALJ makes a finding of malingering based on affirmative

8  evidence thereof, the ALJ may reject a claimant's testimony regarding the severity

9  of symptoms only if the ALJ makes specific findings stating clear and convincing

10  reasons for doing so.  Robbins, 466 F.3d at 883; Moisa, 367 F.3d at 885; Connett

11  v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003).  Id.  (citations omitted).

12  The ALJ's credibility findings "must be sufficiently specific to allow a

13  reviewing court to conclude the ALJ rejected the claimant's testimony on

14  permissible grounds and did not arbitrarily discredit the claimant's testimony."

15  Moisa, 367 F.3d at 885.  To find the claimant not credible, an ALJ must rely on

16  (1) reasons unrelated to the subjective testimony (e.g., reputation for dishonesty);

17  (2) internal contradictions in the testimony; or (3) conflicts between the claimant's

18  testimony and the claimant's conduct (e.g., engaging in daily activities

19  inconsistent with the alleged symptoms, maintaining work inconsistent with the

20  alleged symptoms, failing, without adequate explanation, to take medication, to

21  seek treatment or to follow prescribed course of treatment).  Lingenfelter v.

22  Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007); Orn, 495 F.3d at 636; Robbins, 466

23  F.3d at 883; Burch, 400 F.3d at 680-81; Thomas, 278 F.3d at 950; SSR 96-7p.

24  Although an ALJ may not disregard such claimant's testimony solely because it is

25  not substantiated affirmatively by objective medical evidence, the lack of medical

26  evidence is a factor that the ALJ can consider in the ALJ's credibility assessment.

27  Burch, 400 F.3d at 681. (citations omitted).

28  ///

16

1   Questions of credibility and resolutions of conflicts in the testimony are

2   functions solely of the Commissioner.  <u>Greger</u>, 464 F.3d at 972.  If the ALJ's

3   interpretation of the claimant's testimony is reasonable and is supported by

4   substantial evidence, it is not the court's role to "second-guess" it.  <u>Rollins v.</u>

5   <u>Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001).

6                    **2.      Analysis**

7   At the hearing, plaintiff testified that he was unable to work due to his back

8   pain, mental anguish, and stress.  (AR 524).  He asserted that his back pain greatly

9   limited his ability to sit, stand, and walk.  (AR 539-41).  In particular, he alleged

10  that he could stand and move around for "anywhere from 20 to 40 minutes," stand

11  in one place for "about 10 minutes," walk for about "one block," lean forward

12  "quarter to halfway," and sit for "about 45 minutes" on a typical day.  (AR 539-

13  41).  Plaintiff further added that he was able to remain active, while sitting,

14  standing, or moving around, for about two to four hours before having to lie down

15  for "anywhere between 45 minutes and an hour."  (AR 541).  He alleged that he

16  spent "about half of the day [] on [his] back."  (AR 541).

17  In rejecting plaintiff's subjective complaints, the ALJ stated:

18          Although [plaintiff] alleged an inability to perform even

19      sedentary work, his testimony was not credible or supported by the

20      medical evidence.  Most physicians found him capable of performing

21      at least sedentary work or found brief periods of temporary disability

22      pending further evaluation.  The extent of his allegations at the

23      hearing was not medically supported.  The documentary evidence and

24      the residual functional capacity assessments did not support it.  He

25      admitted he has not undergone any surgical treatment.  There is no

26      indication that surgical treatment has been advised.  The medical

27      expert concluded [plaintiff] could perform a range of sedentary to

28      light work after a thorough review of the records.  (AR 20-21).

1    First, to the extent the ALJ rejected plaintiff's testimony because it was

2 inconsistent with the ALJ's residual functional assessment, this Court cannot find

3 such reason to be clear and convincing or supported by substantial evidence.  The

4 ALJ implicitly adopted Dr. Jensen's residual functional capacity assessment,

5 favoring it over Dr. Goldman's.  As discussed in Part IVB, the ALJ's rejection of

6 Dr. Goldman's residual functional capacity assessment in favor of Dr. Jensen's

7 assessment is unsupported.  Dr. Goldman's assessment of plaintiff's residual

8 functional capacity assessment is consistent with plaintiff's testimony.

9 Accordingly, absent a proper rejection of Dr. Goldman's assessment and a

10 concomitant proper adoption of Dr. Jensen's assessment, it was inappropriate for

11 the ALJ to discount plaintiff's testimony for being inconsistent with the ALJ's

12 (i.e., Dr. Jensen's) residual functional capacity assessment.

13    Second, to the extent the ALJ rejected plaintiff's testimony based upon the

14 absence of a medical recommendation that plaintiff receive surgical treatment,

15 such reason is not clear and convincing and is not supported by substantial

16 evidence.  As previously discussed, Dr. Goldman's treatment notes are replete

17 with recommendations that plaintiff undergo back surgery.  (AR 411, 419, 422,

18 424, 427, 430, 433, 436, 439, 445, 448, 457, 473, 475, 477, 478, 480, 481).

19 Moreover, treatment notes submitted to the ALJ on December 17, 2004, reflect

20 that plaintiff in fact had major back surgery on November 9, 2004.  (Plaintiff's

21 Motion at 27).  Specifically, Dr. Lew Disney performed L4-5 and L5-S1

22 discectomy, interbody fusion, and pedicle screw fixation.  (Plaintiff's Motion at

23 27).  Accordingly the ALJ's rejection of plaintiff's testimony on this basis is

24 unsupported.

25    Third, the only remaining basis upon which the ALJ rejected plaintiff's

26 credibility – the lack of supporting medical evidence – is insufficient in and of

27 itself to discount plaintiff's testimony.  The ALJ acknowledged that the record

28 contained objective evidence showing impairments that could reasonably cause

1   pain (i.e., moderate lumbar herniation at L4-5 and mild disc bulge at L5-S1).  (AR

2   21).  Thus, the alleged absence of medical support for the extent of plaintiff's

3   asserted symptoms and limitations could not by itself support the ALJ's rejection

4   of plaintiff's credibility.

5       The ALJ's reasons for rejecting plaintiff's testimony did not meet the

6   required standard and are not supported by substantial evidence.  Thus, the ALJ's

7   conclusion that plaintiff was not credible warrants reversal and remand for

8   clarification and, as appropriate, compliance with the foregoing standards.

9           **D.    A Remand Is Appropriate**

10      The choice whether to reverse and remand for further administrative

11  proceedings, or to reverse and simply award benefits, is within the discretion of

12  the court.  See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000); Reddick,

13  157 F.3d at 728.  When the court has found that evidence, such as a physician's

14  opinion or a claimant's testimony, has been improperly rejected by the ALJ based

15  on inadequate reasons, the evidence should be credited and an immediate award of

16  benefits directed, rather than a remand for further proceedings, when:  "(1) the

17  ALJ failed to provide legally sufficient reasons for rejecting the evidence;

18  (2) there are no outstanding issues that must be resolved before a determination of

19  disability can be made; and (3) it is clear from the record that the ALJ would be

20  required to find the claimant disabled were such evidence credited."  Benecke v.

21  Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); see also Harman, 211 F.3d at 1178;

22  Smolen, 80 F.3d at 1292.

23      The ALJ provided insufficient reasons to reject plaintiff's subjective

24  symptom testimony and the opinion of his treating orthopedist, Dr. Goldman.  It is

25  not clear to the Court, however, that the ALJ would be required to find that

26  plaintiff was unable to work if such evidence were credited.  The hypothetical

27  posed by the ALJ to the vocational expert did not take into account plaintiff's

28  subjective symptoms or the limitations assessed by Dr. Goldman.  (AR 560-61).

The Ninth Circuit has held that "[i]n cases where the testimony of the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence, we consistently have remanded for further proceedings rather than payment of benefits." See Harman, 211 F.3d at 1180. However, in the "unusual case" in which "it is clear from the record that the claimant is unable to perform gainful employment . . . , even though the vocational expert did not address the precise work limitations established by the improperly discredited testimony, remand for an immediate award of benefits is appropriate." Benecke, 379 F.3d at 595.

Here, it is not clear that plaintiff would be unable to perform gainful employment as the ALJ failed to consider material medical records (i.e., records reflecting that he had back surgery) that were submitted after the hearing but prior to her decision. Where, as in this case, there are errors in the ALJ's findings, remand is appropriate to allow the ALJ the opportunity to remedy those inadequacies and errors. See McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989) (remand appropriate to remedy defects in the record); see also Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (when a court reverses an administrative decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.") (citations and quotations omitted).

///
///
///
///
///
///
///
///

**V.    CONCLUSION**[12]

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Memorandum Opinion and Order of Remand.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:   October 1, 2008

_____
/s/

Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

---

[12]The Court need not, and has not adjudicated plaintiff's remaining challenge to the ALJ's determination – that plaintiff's mental impairment was not severe – except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate.

21